UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DUNKIN' DONUTS FRANCHISED
RESTAURANTS LLC, a Delaware
limited liability company, and DD IP
HOLDER LLC, a Delaware limited
liability company,

                 Plaintiffs,                 Case No._____

v.

CARDILLO CAPITAL, INC., a Delaware
corporation, and ROBERT T. CARDILLO, an
individual,

                 Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC (collectively, "Plaintiffs"), sue defendants Cardillo Capital, Inc. and Robert T. Cardillo and allege:

## PARTIES

1.       Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to Dunkin' Donuts Incorporated and Dunkin' Donuts, LLC ("Dunkin'" or "Dunkin' Donuts"), is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  It is engaged in the business of franchising independent business persons to operate Dunkin' Donuts shops throughout the United States.  Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building

with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2.      Plaintiff, DD IP Holder, LLC, Dunkin' Donuts' wholly-owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  DD IP Holder, LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts" and related marks.  DD IP Holder, LLC has an exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.  Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder, LLC are collectively referred to herein as "Dunkin'" or "Dunkin' Donuts."

3.      Defendant, Cardillo Capital, Inc. ("Cardillo") is a Delaware corporation with its principal place of business in Naples, Florida.  At all times relevant to this action, Cardillo was the owner and operator of (i) a retail doughnut shop located at 3795 Tamiami Trail East, Naples, Florida 34112 (the "Tamiami Trial Shop"), also known as Profit Center 301684, pursuant to a Franchise Agreement dated August 14, 2001 (the "Tamiami Trial Franchise Agreement"), (ii) a retail doughnut shop located at 670 Bald Eagle Drive, Marco Island, Florida 34145 (the "Bald Eagle Shop"), also known as Profit Center 335529, pursuant to a Franchise Agreement dated August 14, 2001 (the "Bald Eagle Franchise Agreement"), (iii) a retail doughnut shop located at 8885 Davis Boulevard, Naples, Florida 34104 (the "Davis Boulevard Shop"), also known as Profit Center 341163, pursuant to a Franchise Agreement dated August 17, 2006 (the "Davis Boulevard Franchise Agreement"), (iv) a retail doughnut shop located at 8901 Davis Boulevard

Extension, Naples, Florida 34104 (the "Davis Extension Shop"), also know as Profit Center 332004, pursuant to a Franchise Agreement dated August 14, 2001 (the "Davis Extension Franchise Agreement"), and (v) a retail doughnut shop located at 8900 Davis Boulevard Extension, Naples, Florida 34104 (the "Second Davis Extension Shop"), also known as Profit Center 330264, pursuant to a Franchise Agreement dated August 14, 2001 ( the "Second Davis Extension Franchise Agreement").

4.      Defendant Robert T. Cardillo ("R. Cardillo") is a natural person and a citizen and a resident of the State of Florida.  Defendant R. Cardillo is an officer and shareholder of Cardillo and personally guaranteed the obligations of Cardillo pursuant to executed personal guarantees.

## JURISDICTION AND VENUE

5.      This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from, among other things, defendants' failure to comply with the provisions of the Tamiami Trail Franchise Agreement, the Bald Eagle Franchise Agreement, the Davis Boulevard Franchise Agreement, the Davis Extension Franchise Agreement and the Second Davis Extension Franchise Agreement (collectively, the "Franchise Agreements").  Plaintiffs seek monetary, injunctive, and other relief against defendants for the reasons set forth below.

6.      This Court has jurisdiction over this case pursuant to the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051, *et seq.* as well as 28 U.S.C. §§1331, 1332(a), 1338, and 1367(a) because this is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

### The Dunkin' Donuts System

8.      Dunkin' Donuts is the franchisor of the Dunkin' Donuts franchise system (the "Dunkin' Donuts System").

9.      Dunkin' Donuts' wholly owned subsidiary DD IP Holder LLC, is the owner of the trademark, service mark, and trade name "Dunkin' Donuts" and related marks.  Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee and other products associated with those shops.

10.      DD IP Holder LLC owns numerous federal registrations for the mark "Dunkin' Donuts" and related marks.  Among those registrations are Registration Nos. 748,901, 1,148,165, and 1,159,354.  Each of these registrations is in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065.

11.      The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

12.      The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

13.      The Dunkin' Donuts trademarks have been very widely advertised and promoted by Dunkin' Donuts over the years.  Dunkin' Donuts and its franchisees have expended approximately $875,000,000 in advertising and promoting the Dunkin' Donuts marks over the last twenty-nine (29) years.  Dunkin' Donuts has spent approximately $94,000,000 in the last fiscal year alone in advertising and promotion.

4

14.     Dunkin' Donuts and its franchisees currently operate approximately 4,100 shops in the United States and 1,800 shops outside the Untied States.  Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style.  In the more than 40 years since the Dunkin' Donuts System began, millions of customers have been served in Dunkin' Donuts shops.

15.     As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts trademarks, the public has come to know and recognize the Dunkin' Donuts marks, and associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees.  The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

16.     Plaintiffs have been forced to engaged undersigned counsel to represent them in this case.

17.     Plaintiffs are obligated to pay undersigned counsel a reasonable fee for professional services provided in this case.

## COUNT I

### (Breach of the Tamiami Trail Franchise Agreement – Defendant Cardillo)

18.     Plaintiffs reallege and incorporate paragraphs 1 through 17 above as if set forth fully herein.

19.     On August 14, 2001, Dunkin' and Cardillo entered into the Tamiami Trail Franchise Agreement, pursuant to which Cardillo was authorized to operate the Tamiami Trial

Shop. A true and correct copy of the Tamiami Trail Franchise Agreement is attached hereto as Exhibit "A".

20. Pursuant to the Tamiami Trail Franchise Agreement, Cardillo is required to pay franchise and advertising fees and other amounts to Dunkin' and its affiliates.

21. Paragraph 9.0.5 of the Tamiami Trail Franchise Agreement provides that Cardillo shall be in default if it, among other things, fails to pay any obligation owed under the Tamiami Trail Franchise Agreement or any other lease or contractual obligation materially affecting the Tamiami Trail Shop.

22. Paragraph 9.1.1 of the Tamiami Trail Franchise Agreement provides a seven (7) day cure period if Cardillo fails, refuses or neglects to pay when due any monies owed under the 66th Street Franchise Agreement.

23. Cardillo breached the Tamiami Trial Franchise Agreement by failing to pay franchise and advertising fees and other amounts to Dunkin' and its affiliates.

24. These breaches constitute good cause for terminating the Tamiami Trail Franchise Agreement.

25. On March 26, 2007, Dunkin' sent a Notice to Cure to Cardillo demanding payment of amounts due under the Tamiami Trail Franchise Agreement and other agreements materially affecting the Tamiami Trail Shop. A true and correct copy of the Notice to Cure related to the Tamiami Trail Shop is attached hereto as Exhibit "B".

26. Cardillo failed to cure the defaults set forth in the Notice to Cure.

27. On April 13, 2007, Dunkin' sent a Notice of Termination to Cardillo, pursuant to which Dunkin' notified Cardillo that the Tamiami Trail Franchise Agreement was terminated

due to Cardillo's failure to cure the noticed defaults. A true and correct copy of the Notice of Termination related to the Tamiami Trail Shop is attached hereto as Exhibit "C".

28.     Despite the Notice of Termination, Cardillo continues to occupy the Tamiami Trail Shop and operate it as a Dunkin' Donuts shop.

29.     As a result of defendant's conduct, plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

<u>**COUNT II**</u>

**(Breach of the Bald Eagle Franchise Agreement – Defendant Cardillo)**

30.     Plaintiffs reallege and incorporate paragraphs 1 through 17 above as if set forth fully herein.

31.     On August 14, 2001, Dunkin' and Cardillo entered into the Bald Eagle Franchise Agreement, pursuant to which Cardillo was authorized to operate the Bald Eagle Shop. A true and correct copy of the Bald Eagle Franchise Agreement is attached hereto as Exhibit "D".

32.     Pursuant to the Bald Eagle Franchise Agreement, Cardillo is required to pay franchise and advertising fees and other amounts to Dunkin' and its affiliates.

33.     Paragraph 9.0.5 of the Bald Eagle Franchise Agreement provides that Cardillo shall be in default if it, among other things, fails to pay any obligation owed under the Bald Eagle Franchise Agreement or any other contractual obligations materially affecting the Bald Eagle Shop.

34.     Paragraph 9.1.1 of the Bald Eagle Franchise Agreement provides a seven (7) day cure period if Cardillo fails, refuses or neglects to pay when due any monies owed under the Bald Eagle Franchise Agreement.

35.     Cardillo breached the Bald Eagle Franchise Agreement by failing to pay franchise and advertising fees and other amounts to Dunkin' and its affiliates.

36.     These breaches constitute good cause for terminating the Bald Eagle Franchise Agreement.

37.     On March 26, 2007, Dunkin' sent a Notice to Cure to Cardillo demanding payment of amounts due under the Bald Eagle Franchise Agreement.  A true and correct copy of the Notice to Cure related to the Bald Eagle Shop is attached hereto as Exhibit "E".

38.     Cardillo failed to cure the defaults set forth in the Notice to Cure.

39.     On April 13, 2007, Dunkin' sent a Notice of Termination to Cardillo, pursuant to which Dunkin' notified Cardillo that the Bald Eagle Franchise Agreement was terminated due to Cardillo's failure to cure the noticed defaults.  A true and correct copy of the Notice of Termination related to the Bald Eagle Shop is attached hereto as Exhibit "F".

40.     Despite the Notice of Termination, Cardillo continues to occupy the Bald Eagle Shop and operate it as a Dunkin' Donuts shop.

41.     As a result of defendant's conduct, plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT III

### (Breach of the Davis Boulevard Franchise Agreement – Defendant Cardillo)

42.     Plaintiffs reallege and incorporate paragraphs 1 through 17 above as if set forth fully herein.

43.     On August 17, 2006, Dunkin' and Cardillo entered into the Davis Boulevard Franchise Agreement, pursuant to which Cardillo was authorized to operate the Davis Boulevard

Shop. A true and correct copy of the Davis Boulevard Franchise Agreement is attached hereto as Exhibit "G".

44.     Pursuant to the Davis Boulevard Franchise Agreement, Cardillo is required to pay franchise and advertising fees and other amounts to Dunkin' and its affiliates.

45.     Paragraph 9.0.5 of the Davis Boulevard Franchise Agreement provides that Cardillo shall be in default if it, among other things, fails to pay any obligation owed under the Davis Boulevard Franchise Agreement or any other contractual obligations materially affecting the Davis Boulevard Shop.

46.     Paragraph 9.1.1 of the Davis Boulevard Franchise Agreement provides a seven (7) day cure period if Cardillo fails, refuses or neglects to pay when due any monies owed under the Davis Boulevard Franchise Agreement.

47.     Cardillo breached the Davis Boulevard Franchise Agreement by failing to pay franchise and advertising fees and other amounts to Dunkin' and its affiliates.

48.     These breaches constitute good cause for terminating the Davis Boulevard Franchise Agreement.

49.     On March 26, 2007, Dunkin' sent a Notice to Cure to Cardillo demanding payment of amounts due under the Davis Boulevard Franchise Agreement. A true and correct copy of the Notice to Cure related to the Davis Boulevard Shop is attached hereto as Exhibit "H".

50.     Cardillo failed to cure the defaults set forth in the Notice to Cure.

51.     On April 13, 2007, Dunkin' sent a Notice of Termination to Cardillo, pursuant to which Dunkin' notified Cardillo that the Davis Boulevard Franchise Agreement was terminated

due to Cardillo's failure to cure the noticed defaults.  A true and correct copy of the Notice of Termination related to the Davis Boulevard Shop is attached hereto as Exhibit "I".

52.      Despite the Notice of Termination, Cardillo continues to occupy the Davis Boulevard Shop and operate it as a Dunkin' Donuts shop.

53.      As a result of defendant's conduct, plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV

**(Breach of Davis Extension Franchise Agreement – Defendant Cardillo)**

54.      Plaintiffs reallege and incorporate paragraphs 1 through 17 above as if set forth fully herein.

55.      On August 14, 2001, Dunkin' and Cardillo entered into the Davis Extension Franchise Agreement, pursuant to which Cardillo was authorized to operate the Davis Extension Shop.  A true and correct copy of the Davis Extension Franchise Agreement is attached hereto as Exhibit "J".

56.      The Davis Extension Franchise Agreement expired on June 13, 2006.

57.      Pursuant to the Davis Extension Franchise Agreement, Cardillo is required, upon expiration, to pay all amounts owed to Dunkin' and its affiliates and to otherwise comply with the post-termination obligations under the Davis Extension Franchise Agreement.

58.      Cardillo breached the Davis Extension Franchise Agreement by failing to pay all amounts due to Dunkin' and its affiliates upon expiration and by otherwise failing to comply with its post-termination obligations under the Davis Extension Franchise Agreement.

59.     As a result of defendant's conduct, plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT V

**(Breach of Second Davis Extension Franchise Agreement – Defendant Cardillo)**

60.     Plaintiffs reallege and incorporate paragraphs 1 through 17 above as if set forth fully herein.

61.     On August 14, 2001, Dunkin' and Cardillo entered into the Second Davis Extension Franchise Agreement, pursuant to which Cardillo was authorized to operate the Davis Extension Shop.  A true and correct copy of the Second Davis Extension Franchise Agreement is attached hereto as Exhibit "K".

62.     The Second Davis Extension Franchise Agreement expired on December 9, 2006.

63.     Pursuant to the Second Davis Extension Franchise Agreement, Cardillo is required, upon expiration, to pay all amounts owed to Dunkin' and its affiliates and to otherwise comply with the post-termination obligations under the Second Davis Extension Franchise Agreement.

64.     Cardillo breached the Second Davis Extension Franchise Agreement by failing to pay all amounts due to Dunkin' and its affiliates upon expiration and by otherwise failing to comply with its post-termination obligations under the Second Davis Extension Franchise Agreement.

65.     As a result of defendant's conduct, plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT VI

### (Breach of Personal Guarantee – Defendant R. Cardillo)

66.     Plaintiffs reallege and incorporate paragraphs 1 through 17, 19 through 24, 31 through 36, 43 through 48, 55 through 58, and 61 through 64 above as if set forth fully herein.

67.     In connection with execution of the Franchise Agreements, R. Cardillo executed a Personal Guarantee of Officers, Shareholders and Directors of Franchise Corporation with respect to each of the Franchise Agreements (collectively, the "Personal Guarantees"). Each of the Personal Guarantees are included within the copies of the Franchise Agreements attached hereto as Exhibits "A", "D", "G", "H" and "I".

68.     R. Cardillo has breached the Personal Guarantees by failing to satisfy the outstanding obligations of Cardillo under the Franchise Agreements.

69.     Dunkin' has been damaged as a result of R. Cardillo's breach of the Personal Guarantees.

## COUNT VII

### (Action for Injunctive Relief – Cardillo)

70.     Plaintiffs reallege and incorporate paragraphs 1 through 17, 19 through 28, 31 through 40 and 43 through 52 above as if set forth fully herein.

71.     This is an action for injunctive relief.

72.     The Franchise Agreements provide, *inter alia,* as follows:

a.     Paragraph 7.1 of the Franchise Agreements provides as follows:

FRANCHISEE agrees to use the Proprietary Marks only in the manner and to the extent specifically licensed by this Agreement. FRANCHISEE shall not sublicense the Proprietary Marks. FRANCHISEE further agrees that any unauthorized use of the Proprietary Marks during the term of or after expiration or the

12

earlier termination of this Agreement shall constitute an incurable default causing irreparable harm subject to injunctive relief.

      b.      Paragraph 9.4.2 of the Franchise Agreements provides that upon termination:

FRANCHISEE shall immediately cease to operate the Unit, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former FRANCHISEE or FRANCHISOR; and

      c.      Paragraph 9.4.3 of the Franchise Agreements provides that upon termination:

FRANCHISEE shall immediately and permanently cease to use, by advertising or in any other manner whatsoever, any feature or method associated with the System(s), any or all of the Proprietary Marks and any other trade secrets, confidential information, operating manuals, slogans, trade dress, signs, symbols or devices which are part of FRANCHISOR's System(s) or are otherwise used in connection with the operation of the Unit. FRANCHISEE agrees that any such unauthorized use or continued use after the termination of this Agreement shall constitute irreparable harm. Continued use by FRANCHISEE of FRANCHISOR's trademarks, trade names, Proprietary Marks, and service marks after termination of this Agreement shall constitute willful trademark infringement by FRANCHISEE; and

      d.      Paragraph 9.4.4 of the Franchise Agreements provides that upon termination:

FRANCHISEE shall immediately return to FRANCHISOR all operating manuals, plans, specifications, and other materials in FRANCHISEE's possession containing information prepared by FRANCHISOR and relative to the operation of the Unit, and all copies thereof (all of which are acknowledged to be FRANCHISOR's property), and shall retain no copy or record of any of the foregoing, except FRANCHISEE's copy of this Agreement, any correspondence between the parties, and any other documents which FRANCHISEE reasonably needs for compliance with any provision of law.

73.     Cardillo has failed to abide by the above-referenced provisions of the Tamiami Trail Franchise Agreement, the Bald Eagle Franchise Agreement and the Davis Boulevard Franchise Agreement and continues to operate those Dunkin' Donuts shops in violation of those Franchise Agreements.

74.     Unless restrained by this Court, Cardillo will continue to operate the subject Dunkin' Donuts shops and to use confidential information causing irreparable harm to plaintiffs which cannot be adequately remedied by compensatory damages.  Therefore, plaintiffs have no adequate remedy at law.

## COUNT VIII

### (Trademark Infringement – Defendant Cardillo)

75.     Plaintiffs reallege and incorporate paragraphs 1 through 17, 19 through 28, 31 through 40 and 43 through 52 above as if set forth fully herein.

76.     Plaintiffs were granted registration of their various trademarks by the United States Commissioner of Patents and Trademarks.

77.     Since registering their trademarks, plaintiffs have extensively advertised their trademarks and trade names in connection with their products and services.

78.     Defendant's right to use plaintiffs' trademarks and trade names ceased when the Franchise Agreements were terminated.

79.     Notwithstanding the termination of the Franchise Agreements, defendant continues to use plaintiffs' trademarks and trade names in the operation of its businesses in violation of the Lanham Act.

80.     Defendant's continued use and display of plaintiffs' trademarks and trade name after termination constitutes willful and intentional infringement of plaintiffs' trademarks and trade names in violation of Section 43(g) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

81.     Defendant's acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

82.     Plaintiffs have suffered irreparable harm and will continue to suffer irreparable harm as a result of defendant's infringement.

83.     Plaintiffs have no adequate remedy at law to protect their substantial business and property rights.  The damages from defendant's activities are considerable and continuing and thus not capable of ascertainment at this time.

84.     Plaintiffs are entitled to preliminary and permanent injunctive relief preventing defendant's infringement.

## COUNT IX

### (Unfair Competition – Defendant Cardillo)

85.     Plaintiff realleges and incorporates paragraphs 1 through 17, 19 through 28, 31 through 40 and 43 through 52 above as if set forth fully herein.

86.     Defendant's use in commerce of plaintiffs' trademarks and trade name outside the scope of the Franchise Agreements and without plaintiffs' consent is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services or commercial activities by another person.   Such unauthorized use of plaintiffs' trademarks and trade name constitutes unfair competition in violation of violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and common law.

87.     Defendant's acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

88.     Plaintiffs have suffered irreparable harm and will continue to suffer irreparable harm as a result of defendant's unfair competition.

89.     Plaintiffs have no adequate remedy at law to protect their substantial business and property rights.  The damages from defendant's activities are considerable and continuing and thus not capable of ascertainment at this time.

90.     Plaintiffs are entitled to preliminary and permanent injunctive relief preventing defendant's unfair competition.

## COUNT VIII

### (Trade Dress Infringement – Defendant Cardillo)

91.     Plaintiff realleges and incorporates paragraphs 1 through 17, 19 through 28, 31 through 40 and 43 through 52 above as if set forth fully herein.

92.     Defendant's shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same lettering style and in the same distinctive color scheme as Dunkin' Donuts uses for the doughnut shops operated by Dunkin' Donuts licensees.

93.     The use by defendant of trade dress that is identical to the Dunkin' Donuts trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of those shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' Donuts shops operated by Dunkin' Donuts licensees.  Such adoption of Dunkin' Donuts trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

16

94.     Defendant's acts were done knowingly and intentionally to cause confusion, or to cause mistake or deceive.

95.     Plaintiffs have suffered irreparable harm and will continue to suffer irreparable harm as a result of defendant's trade dress infringement.

96.     Plaintiffs have no adequate remedy at law to protect their substantial business and property rights.  The damages from defendant's activities are considerable and continuing and thus not capable of ascertainment at this time.

97.     Plaintiffs are entitled to preliminary and permanent injunctive relief preventing defendant's trade dress infringement.

WHEREFORE, plaintiffs request the following relief:

1.      A declaratory judgment that defendant's conduct violated the terms of the Franchise Agreements between the parties and constitutes grounds for terminating those agreements;

2.      An order ratifying and enforcing the termination of the Franchise Agreements as of the effective dates contained in the Notices of Termination;

3.      For a preliminary and permanent injunction against defendant, and its agents, servants, employees and attorneys, and all others in active concert or participation with them, preventing them from using the Dunkin' trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Dunkin';

4.      For a preliminary and permanent injunction against defendant, and its agents, servants, employees and attorneys, and all others in active concert or participation with them, enforcing all post-term obligations contained in any agreement with defendant, including but not limited to the Franchise Agreements;

17

5.      For a preliminary and permanent injunction against defendant, and its agents, servants, employees and attorneys, and all others in active concert or participation with them, preventing them from violating the terms of the non-compete provisions of the Franchise Agreements;

6.      For a money judgment against defendants, jointly and severally, in an amount to be determined at trial, but in excess of $75,000.00, for actual and consequential damages together with prejudgment interest allowed by law;

7.      For an award equal to three (3) times the earnings and revenues obtained by defendants as allowed by § 35 of the Lanham Act, 15 U.S.C. § 1117;

8.      For an award of exemplary or punitive damages because of the willful, intentional, and malicious nature of defendants' conduct;

9.      For plaintiffs' costs, disbursements, and attorneys' fees incurred in this action, as allowed by the Lanham Act and the applicable agreements; and

10.     For such other and further relief as the Court deems just and proper.

Dated: April 30, 2007

_____

Paul D. Watson
Florida Bar No. 957224
SIVYER BARLOW & WATSON, P.A.
100 South Ashley Drive, Suite 2150
Tampa, Florida 33602
Telephone:  (813) 221-4242
Facsimile:  (813) 227-8598
pwatson@sbwlegal.com
Attorneys for Plaintiffs