```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                    FORT MYERS DIVISION


DUNKIN'   DONUTS   FRANCHISED
RESTAURANTS LLC; DD IP HOLDER LLC,

          Plaintiffs,

vs.                                 Case No.  2:07-cv-278-FtM-29SPC

CARDILLO CAPITAL, INC.; ROBERT T.
CARDILLO,

          Defendants.
_____
```

**OPINION AND ORDER**

This matter came before the Court on Plaintiffs' Motion for Preliminary Injunction and Supporting Memorandum of Law (Doc. #6), filed on May 2, 2007. Defendants' Memorandum in Opposition (Doc. #13) was filed on July 5, 2007. Plaintiffs' Reply (Doc. #16) was filed on July 12, 2007, plaintiffs' Notice of Filing affidavits (Doc. #17) was filed on July 12, 2007, and defendants' Notice of Filing Affidavits (Doc. #21) was filed on July 26, 2007. The Court heard oral argument on July 27, 2007.

**I.**

For purposes of the preliminary injunction motion, the Court makes the following factual findings: Dunkin' Donuts Franchised Restaurants LLC (Dunkin' Donuts), successor-in-interest to Dunkin' Donuts Incorporated and Dunkin' Donuts, LLC, is a Delaware limited liability company with its principal place of

business in Canton, Massachusetts.  Dunkin' Donuts is engaged in the business of franchising independent business persons to operate Dunkin' Donuts shops throughout the United States.

DD IP Holder LLC is a wholly-owned subsidiary of Dunkin' Donuts and is the successor-in-interest to Dunkin' Donuts USA, Inc.  It is a Delaware limited liability company with its principal place of business in Canton, Massachusetts.  DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts" and related marks (collectively the Dunkin' Donuts Marks), and owns numerous federal registrations for the Dunkin' Donuts Marks.  Each of these registrations is in full force and effect.

Dunkin' Donuts has the exclusive license to use and license others to use the Dunkin' Donuts Marks, and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee and other products associated with those shops.

The Dunkin' Donuts Marks are distinctive and famous throughout the United States, have acquired secondary meaning, and are utilized in interstate commerce.  The Dunkin' Donuts Marks have been very widely advertised and promoted by Dunkin' Donuts over the years.  Dunkin' Donuts franchisees are licensed

to use the Dunkin' Donuts Marks and to operate under the Dunkin' Donut system.

Dunkin' Donuts and its franchisees currently operate approximately 4,100 shops in the United States and 1,800 shops outside the Untied States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than forty (40) years since the Dunkin' Donuts system began, millions of customers have been served in Dunkin' Donuts shops. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts Marks, the public has come to know and recognize the Dunkin' Donuts Marks, and associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts Marks are among the best and most widely known trademarks in the United States today, and are assets of exceptional value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

Cardillo Capital, Inc. ("Cardillo") is a Delaware corporation with its principal place of business in Naples, Florida. Defendant Robert T. Cardillo (Robert Cardillo) is an officer and shareholder of Cardillo, and personally guaranteed the Franchise Agreements at issue here.

On August 14, 2001, Dunkin' Donuts and Cardillo entered into a Franchise Agreement (Doc. #1, Exh. A), pursuant to which Cardillo was authorized to operate a retail doughnut shop located at 3795 Tamiami Trail East, Naples, Florida 34112 utilizing the Dunkin' Donuts' Marks, proprietary information, and system. On August 17, 2006, Dunkin' Donuts and Cardillo entered into a Franchise Agreement (Doc. #1, Exh. G), pursuant to which Cardillo was authorized to operate a retail doughnut shop located at 8885 Davis Boulevard, Naples, Florida 34104 utilizing the Dunkin' Donuts' Marks, proprietary information, and system. These agreements will be collectively referred to as the Franchise Agreements.

The Franchise Agreements provide in pertinent part: (1) Cardillo agreed to use the Dunkin' Donuts Marks only in the manner and to the extent licensed by the Franchise Agreements (§ 7.1); (2) Cardillo agreed that any unauthorized use of the Dunkin' Donuts Marks after termination of the Franchise Agreements shall constitute an incurable default causing irreparable harm subject to injunctive relief (§ 7.1); (3) Cardillo is required to pay a weekly Continuing Franchise Fee (§ 4.3) and a weekly Continuing Advertising Fee (§ 4.4), and other amounts to Dunkin' Donuts; (4) a default occurs if Cardillo fails to pay any obligation owed under the Franchise Agreements,

4

including to pay the weekly Continuing Franchise Fee and the weekly Continuing Advertising Fee (§ 9.0.5); (5) if Cardillo fails any obligation owed under the Franchise Agreements, including to pay the weekly Continuing Franchise Fee and the weekly Continuing Advertising Fee, there is a seven (7) day cure period (§ 9.1.1); (6) if Cardillo fails to cure a default within the seven day period, Dunkin' Donuts is entitled to terminate the Franchise Agreements effective upon receipt of a written notice of termination from Dunkin' Donuts (§ 9.4); and (7) upon termination of the Franchise Agreements, Cardillo's right to use the Dunkin' Donuts Marks and its system to operate the donut shops terminated (§ 9.4).  Additional provisions will be discussed below as necessary to address specific issues.

From approximately January, 2007 through July 3, 2007, Cardillo failed to file its required sales reports or to pay the Continuing Franchise Fee and the Continuing Advertising Fees owed to Dunkin' Donuts.  As of April 27, 2007, Cardillo owed Dunkin' Donuts in excess of $24,000 and Robert Cardillo owed in excess of $36,000 on personal guarantees.

On March 26, 2007, Dunkin' Donuts sent individual Notices to Cure to Cardillo and Robert Cardillo demanding payment of amounts due under the Franchise Agreements for the two donut shops.

5

Cardillo and Robert Cardillo failed to timely cure the defaults set forth in the Notices to Cure.

On April 13, 2007, Dunkin' Donuts sent individual Notices of Termination to Cardillo and Robert Cardillo, pursuant to which Dunkin' Donuts notified them that the Franchise Agreements were terminated due to their failure to cure the noticed defaults. The Franchise Agreements were terminated effective April 13, 2007.

Cardillo continues to occupy both donut shops and operates each as a Dunkin' Donuts shop. Cardillo continues to use the Dunkin' Donuts Marks, proprietary and confidential information and system, and has otherwise continued to hold itself out to the public as an authorized franchisee of Dunkin' Donuts.

In their ten-count Complaint (Doc. #1) filed on May 1, 2007, plaintiffs seek injunctive relief for breach of the Franchise Agreements and injunctive relief pursuant to the Lanham Act for trademark infringement, trade dress infringement and unfair competition.

On July 3, 2007, Cardillo and Robert Cardillo accessed the electronic sales reporting and payment system maintained by Dunkin' Donuts. They reported sales and paid by electronic debit the fees incurred both before and after termination of the Franchise Agreements. This action by defendants was not

6

initiated by any affirmative action of Dunkin' Donuts, which could not have stopped or blocked a debit from defendants' bank account in this fashion. Except for a *de minimis* amount (and costs and attorney fees in connection with this lawsuit), defendants paid all fees due through July 3, 2007.

## II.

In the Eleventh Circuit, issuance of "a preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries [the] burden of persuasion on each of [four] prerequisites." Suntrust Bank v. Houghton Mifflin Co., 252 F.3d 1165, 1166 (11th Cir. 2001). See also McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). The four prerequisites for a preliminary injunction are: (1) a substantial likelihood of succeeding on the merits; (2) a substantial threat of irreparable injury if relief is denied; (3) an injury that outweighs the opponent's potential injury if relief is granted; and (4) an injunction would not harm or do a disservice to the public interest. Suntrust Bank, 252 F.3d at 1166; American Red Cross v. Palm Beach Blood Bank, 143 F.3d 1407, 1410 (11th Cir. 1998); Gold Coast Publ'ns, Inc. v. Corrigan, 42 F.3d 1336, 1343 (11th Cir. 1994), cert. denied, 516 U.S. 931 (1995). The burden of persuasion for each of the four requirements is upon the movant. Siegel v. LePore, 234 F.3d

7

1163, 1176 (11th Cir. 2000)(en banc).  These four requirements apply in a breach of franchise agreement case, McDonald's Corp., 147 F.3d at 1307, and in a trademark infringement case. Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc., 304 F.3d 1167, 1171 n.1 (11th Cir. 2002); Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002).

**III.**

**A. Substantial Likelihood of Success on the Merits:**

**(1)   Breach of Franchise Agreements Claims:**

The breach of contract claims under the Franchise Agreements are governed by Massachusetts law.  (Doc. #1, Exhs. A and G, § 17.) To establish a breach of contract claim under Massachusetts law, plaintiff must show that: (1) the parties reached a valid and binding agreement; (2) defendant breached the terms of the contract; and (3) plaintiff suffered damages from the breach. Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995).  There is no dispute, and ample evidence to support, that the parties reached valid and binding agreements in the Franchise Agreements.  There is also no factual dispute that defendants failed to pay the required fees in a timely fashion, failed to cure within seven days, had the Franchise Agreements properly terminated, and continue to use the Dunkin' Donuts Marks and to

8

operate two donut shops as if they were Dunkin' Donuts franchisees. While defendants deny that the facts constitute a "breach" of the Franchise Agreements, plaintiffs have established a substantial likelihood that "breaches" did in fact occur. Failure to make payments called for under a contract constitute a breach going to the root of the contract. <u>Petrangelo v. Pollard</u>, 255 N.E.2d 342, 345 (Mass. 1970). Additionally, it is clearly established that Dunkin' Donuts suffered damages as a result of the breaches.

Defendants argue, however, that Dunkin' Donuts has waived its breach of contract claims because it accepted the July 3, 2007, payment of fees pursuant to the on-line debit. "Under Massachusetts law, the burden of proving waiver is upon the party who makes the assertion. In order to establish waiver, the party must show clear, decisive and unequivocal conduct indicating that the opposing party would not insist that the contractual provision at issue be performed." <u>Brennan v. Carvel Corp.</u>, 929 F.2d 801, 810 (1st Cir. 1991)(internal citations omitted). This is an "uncompromising" standard. <u>Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 992 (1st Cir. 1988). The debit by defendants falls far short of the type of conduct necessary to establish waiver by plaintiffs of its rights to timely payments and non-use of the Dunkin' Donuts Marks after

termination.  Additionally, the parties agreed in the Franchise Agreements (§ 13.0) that such conduct does not constitute a waiver.  There was no evidence presented which would support a waiver by Dunkin' Donuts.

Accordingly, the Court finds that plaintiffs have established a substantial likelihood of success on their breach of contract claims.

**(2)   Lanham Act Claims:**

The Lanham Act, 15 U.S.C. § 1051 et seq., prohibits infringement of trademarks and trade names and certain unfair competition.  15 U.S.C. § 1114(1) (infringement), § 1125(a) (unfair competition).  "In order to succeed on the merits of a trademark infringement claim [under 15 U.S.C. § 1114(1) or § 1125(a)(1)], a plaintiff must show that the defendant used the mark in commerce without its consent and 'that the unauthorized use was likely to deceive, cause confusion, or result in mistake.'" Davidoff & Cie, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300-01 (11th Cir. 2001)(quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1307 (11th Cir. 1998)). Essentially, plaintiffs must show that "it owns the mark in question, that the defendant's mark is similar to or the same as the plaintiff's mark, and that defendant's use of the mark is likely to cause

confusion among consumers." Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc., 139 F.Supp. 2d 147, 158 (D. Mass. 2001).

It is undisputed that plaintiff owns the Dunkin' Donuts Marks and that defendants used the Dunkin' Donuts Marks in commerce after termination without the consent of Dunkin' Donuts. The Court has found that plaintiffs have established a substantial likelihood of success on the claims that Cardillo breached the Franchise Agreements. It is also not disputed that defendants are now using the Dunkin' Donuts Marks in the operation of its two Naples donut shops. It is also clear that using the Dunkin' Donuts Marks is likely to cause confusion among consumers, who will wrongly believe defendants to be operating a franchised Dunkin' Donuts shop. All seven factors[1] considered by the Court weigh in favor of plaintiffs. Accordingly, the Court finds that plaintiffs have established a substantial likelihood of success on their trademark infringement and unfair competition claims.

---

[1] (1) The type of mark; (2) the similarity between plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of the advertising methods; (6) defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with plaintiff's established mark; and (7) actual confusion. Cumulus Media, 304 F.3d at 1172 n.5.

11

**B.   Irreparable Injury:**

Plaintiff established that the Franchise Agreements were properly terminated and have not been revived by the belated payments. It is also undisputed that defendants continue to operate the two Naples donut shops utilizing the Dunkin' Donuts trademarks. Furthermore, there is no dispute that consumers believe that the two Naples stores are authorized Dunkin' Donuts shops and will continue to do so as long as they bear the Dunkin' Donuts trademark. The Eleventh Circuit has stated that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." Davidoff & Cie, S.A. v. PLD Int'l Corp., 263 F.3d at 1304 (quoting McDonald's Corp., 147 F.3d at 1310). The very nature of trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated. Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992). Additionally, the Franchise Agreements executed between plaintiff and defendants provide in relevant part that "any unauthorized use of the [Dunkin' Donuts trademark] during the term of or after expiration or the earlier termination of this Agreement shall

constitute an incurable default causing irreparable harm." (Doc. #1, Exs. A & G, §7.1.) Thus, defendants had agreed that the non-authorized use of plaintiff's trademark constitutes irreparable harm. The Court finds that the plaintiff has met its burden and has established a substantial threat of irreparable injury if a preliminary injunction is not granted.

**C.  Balance of Potential Harms:**

In deciding whether injunctive relief is appropriate, the third task a trial court must undertake is to balance the hardships to the respective parties. Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1247 (11th Cir. 2002). The inquiry is whether the probable loss of consumer goodwill outweighs the cost of delay to the defendant who will be unable to sell the product using the trademark until a decision is reached on the merits. Davidoff & Cie, S.A. v. PLD International Corp., 263 F.3d at 1304.

The issuance of a preliminary injunction will result in the defendants being forced to lay off twenty-five employees and suffering substantial financial difficulties as a result of the continued payment of rent on the leases of the two Naples donut stores. (Doc. #13, p. 10.) However, a denial of the preliminary injunction will result in Dunkin' Donuts losing all control over its trademark throughout the course of this litigation, as well

13

as virtually immeasurable losses to the goodwill it has built over the years. After careful review of the harm to the parties, the Court finds that the plaintiffs have established that the harm they will suffer if the preliminary injunction is not granted narrowly outweighs the harm defendants will suffer if a preliminary injunction is granted.

**D.   Public Interest:**

An injunction in this case "is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace." <u>Davidoff & Cie, S.A. v. PLD International Corp.</u>, 263 F.3d at 1304. Under the facts in this case, plaintiffs have established that the granting of a preliminary injunction is not adverse to the public interest.

Accordingly, it is now

**ORDERED**:

Plaintiffs' Motion for Preliminary Injunction (Doc. #2) is **GRANTED**. A preliminary injunction will be entered separately.

**DONE AND ORDERED** at Fort Myers, Florida, this ___30th___ day of July, 2007.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record