UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DUNKIN' DONUTS FRANCHISED
RESTAURANTS LLC; DD IP HOLDER LLC,

        Plaintiffs,

vs.                          Case No. 2:07-cv-278-FtM-29SPC

CARDILLO CAPITAL, INC.; ROBERT T.
CARDILLO,

        Defendants.
_____

**OPINION AND ORDER**

     This matter comes before the Court on plaintiffs' Motion for Summary Judgment (Doc. #36) filed on November 14, 2007. Defendants have not filed a response, and the time to do so has long expired. The Court notes that defendants have failed to respond to multiple orders to show cause (Docs. ## 40, 44), and have generally not filed any documents with the Court since October 8, 2007.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party

bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

The summary judgment facts are as follows: Dunkin' Donuts Franchised Restaurants LLC (Dunkin' Donuts) is engaged in the business of franchising independent business persons to operate Dunkin' Donuts shops throughout the United States. DD IP Holder LLC is a wholly-owned subsidiary of Dunkin' Donuts and is the owner

of the trademark, service mark, and trade name "Dunkin' Donuts" and related marks (collectively the Dunkin' Donuts Marks), and owns numerous federal registrations for the Dunkin' Donuts Marks. Each of these registrations is in full force and effect.

Dunkin' Donuts has the exclusive license to use and license others to use the Dunkin' Donuts Marks, and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee and other products associated with those shops. (Doc. #1, pg. 2.) The Dunkin' Donuts Marks are distinctive and famous throughout the United States, have acquired secondary meaning, and are utilized in interstate commerce. The Dunkin' Donuts Marks have been very widely advertised and promoted by Dunkin' Donuts over the years. Dunkin' Donuts franchisees are licensed to use the Dunkin' Donuts Marks and to operate under the Dunkin' Donut system. (Doc. #1, pg. 1.)

Cardillo Capital, Inc. ("Cardillo") is a Delaware corporation with its principal place of business in Naples, Florida. Defendant Robert T. Cardillo (Robert Cardillo) is an officer and shareholder of Cardillo, and personally guaranteed the Franchise Agreements between Cardillo and Dunkin' Donuts. (Docs. ## 1, ¶4; 12, ¶67.)

On August 14, 2001, Dunkin' Donuts and Cardillo entered into four franchise agreements, pursuant to which Cardillo was authorized to operate retail doughnut shops at the following locations: (1) 3795 Tamiami Trail East, Naples, Florida 34112 (the

Tamiami Trail shop) (Doc. #1-2); (2) 670 Bald Eagle Drive, Marco Island, Florida 34145 (the Bald Eagle Shop)(Doc. #1-5); (3) 8901 Davis Boulevard Extension, Naples, Florida 34104 (the Davis Extension shop)(Doc. #1-11); and (4) 8900 Davis Boulevard Extension, Naples, Florida 34104 (the Second Davis Extension shop)(Doc. #1-12). On August 17, 2006, Dunkin' Donuts and Cardillo entered into an additional Franchise Agreement (Doc. #1-8), pursuant to which Cardillo was authorized to operate a retail doughnut shop located at 8885 Davis Boulevard, Naples, Florida 34104 (the Davis Boulevard shop). All the executed Franchise Agreements authorized Cardillo to utilize the Dunkin' Donuts' Marks, proprietary information, and systems. These agreements will be collectively referred to as the Franchise Agreements.[1]

The Franchise Agreements provide in pertinent part: (1) Cardillo agreed to use the Dunkin' Donuts Marks only in the manner and to the extent licensed by the Franchise Agreements (§ 7.1); (2) Cardillo agreed that any unauthorized use of the Dunkin' Donuts Marks after termination of the Franchise Agreements shall constitute an incurable default causing irreparable harm subject to

---

[1] The Court notes that: (1) the Tamiami Trail Franchise Agreement was terminated on April 13, 2007; (2) the Bald Eagle Franchise Agreement expired on June 18, 2007; (3) the Davis Extension Franchise Agreement expired on June 13, 2006; (4) the Second Davis Extension Franchise Agreement expired on December 9, 2006; and (5) The Davis Boulevard Franchise Agreement was terminated on April 13, 2007. (Docs. ## 1-4, p. 2; 1-10, p. 2; 36, p. 2.)

injunctive relief (§ 7.1); (3) Cardillo is required to pay a weekly Continuing Franchise Fee (§ 4.3) and a weekly Continuing Advertising Fee (§ 4.4), and other amounts to Dunkin' Donuts; (4) a default occurs if Cardillo fails to pay any obligation owed under the Franchise Agreements, including to pay the weekly Continuing Franchise Fee and the weekly Continuing Advertising Fee (§ 9.0.5); (5) if Cardillo fails any obligation owed under the Franchise Agreements, including to pay the weekly Continuing Franchise Fee and the weekly Continuing Advertising Fee, there is a seven (7) day cure period (§ 9.1.1); (6) if Cardillo fails to cure a default within the seven day period, Dunkin' Donuts is entitled to terminate the Franchise Agreements effective upon receipt of a written notice of termination from Dunkin' Donuts (§ 9.4); and (7) upon termination of the Franchise Agreements, Cardillo's right to use the Dunkin' Donuts Marks and its system to operate the donut shops terminated (§ 9.4). Additional provisions will be discussed below as necessary to address specific issues.

In their ten-count Complaint (Doc. #1) filed on May 1, 2007, plaintiffs assert breach of contract (Counts I-V), breach of a personal guarantee (Count VI), trademark infringement (Count VIII), unfair competition (Count IX), and trade dress infringement (Count X). The Complaint seeks the recovery of damages as well as the entry of a permanent injunction (Count VII).

**III.**

**A. Breach of Franchise Agreements Claims (Counts I-V)**

The breach of contract claims under the Franchise Agreements are governed by Massachusetts law. (Docs. ## 1-2, 1-5, 1-8, 1-11, § 17.) To establish a breach of contract claim under Massachusetts law, plaintiff must show that: (1) the parties reached a valid and binding agreement; (2) defendant breached the terms of the contract; and (3) plaintiff suffered damages from the breach.[2] Coll v. PB Diagnostic Sys., 50 F.3d 1115, 1122 (1st Cir. 1995). There is no dispute that the parties reached valid and binding agreements in the Franchise Agreements. There is also no factual dispute that defendants failed to pay the required fees in a timely fashion or that all the Franchise Agreements have either been properly terminated or expired. (See supra n. 1.)

Defendants' Answer to Complaint For Damages and Injunctive Relief (the Answer) denies that the facts constitute a "breach" of the Franchise Agreements. (Doc. #12, ¶¶ 23, 35, 47, 58, 64.) However, defendants do admit that they failed to remedy the defects articulated in the Notices to Cure sent pursuant to the Tamiami

---

[2] The Court notes that the Second Davis Franchise Agreement does not contain a choice of law provision. This omission is inconsequential as the elements of a breach of contract claim are nearly identical under the laws of Massachusetts and Florida. See Beck v. Lazard Freres & Co., 175 F.3d 913, 914 (11th Cir. 1999)(stating that under Florida law, the elements of a breach of contract claim are "(1) a valid contract; (2) a material breach; and (3) damages.")

Trail, Bald Eagle, Davis Boulevard Franchise Agreements. (Doc. #12, ¶¶ 26, 38, 50.) As to the Davis Extension and Second Davis Extension Franchise Agreements, defendants deny being in breach, but do not provide any evidence supporting that assertion.

The Court finds that plaintiffs have established that "breaches" did in fact occur. (Docs. ## 1-3, 1-6, 1-9.) Failure to make payments called for under a contract constitute a breach going to the root of the contract. Petrangelo v. Pollard, 255 N.E.2d 342, 345 (Mass. 1970). Andrea Springer's uncontroverted affidavit establishes the amounts that defendants failed to pay under the Franchise Agreements. (Doc. #37.) Those amounts represent plaintiffs' damages for the breach of contract claims. See infra § III.E for a detailed discussion on damages.

Defendants' Answer asserts that Dunkin' Donuts has waived its breach of contract claims because plaintiffs "have continued to accept, and Defendants have continued to pay, franchise and advertising fees pursuant to all agreements as Defendants' business at each franchise permits, including the franchise and advertising fees referred to in the complaint." (Doc. #12, p. 7.) "Under Massachusetts law, the burden of proving waiver is upon the party who makes the assertion. In order to establish waiver, the party must show clear, decisive and unequivocal conduct indicating that the opposing party would not insist that the contractual provision at issue be performed." Brennan v. Carvel Corp., 929 F.2d 801, 810

(1st Cir. 1991)(internal citations omitted).  This is an "uncompromising" standard.  <u>Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 992 (1st Cir. 1988).  The debit by defendants falls far short of the type of conduct necessary to establish waiver by plaintiffs of its rights to timely payments and non-use of the Dunkin' Donuts Marks after termination.  Additionally, the parties agreed in the Franchise Agreements (§ 13.0) that such conduct does not constitute a waiver.  Thus, as there is no evidence presented which supports a waiver by Dunkin' Donuts, summary judgment is granted in favor of plaintiffs as to Counts I through V.

**(B) Personal Guarantee Claim (Count VI)**

Defendant Robert Cardillo admits to personally guaranteeing the Franchise Agreements.  (Doc. #12, ¶67.)  The Personal Guarantee provision in each of the Franchise Agreements provides in relevant part that:

> The undersigned hereby, jointly an severally, personally guarantee the full payment of FRANCHISEE's money obligations under Section 4 and the performance of all of FRANCHISEE's other obligations under this Franchise Agreement . . . (Docs. ## 1-2, p. 26; 1-5, p. 25; 1-8, p. 28; 1-11, p. 25; 1-12, p. 6.)

The Court finds that due to the personal guarantee, defendant Robert Cardillo is jointly and severally liable for the liabilities of Cardillo.  Therefore summary judgement is granted in favor of plaintiffs on Count VI.

**(C) Lanham Act Claims (Counts VIII through X)**

The Lanham Act, 15 U.S.C. § 1051 et seq., prohibits infringement of trademarks and trade names and certain unfair competition. 15 U.S.C. § 1114(1) (infringement), § 1125(a) (unfair competition). "In order to succeed on the merits of a trademark infringement claim [under 15 U.S.C. § 1114(1) or § 1125(a)(1)], a plaintiff must show that the defendant used the mark in commerce without its consent and 'that the unauthorized use was likely to deceive, cause confusion, or result in mistake.'" Davidoff & Cie, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300-01 (11th Cir. 2001)(quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1307 (11th Cir. 1998)). Essentially, plaintiffs must show that "it owns the mark in question, that the defendant's mark is similar to or the same as the plaintiff's mark, and that defendant's use of the mark is likely to cause confusion among consumers." Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc., 139 F. Supp. 2d 147, 158 (D. Mass. 2001).

It is undisputed that plaintiffs own the Dunkin' Donuts Marks and that defendants used the Dunkin' Donuts Marks in commerce after termination of the Franchise Agreements without the consent of Dunkin' Donuts until the entry of the Court's Preliminary Injunction (Doc. #24). The Court has already found that plaintiffs are entitled to summary judgment on the claims that Cardillo breached the Franchise Agreements. It is also clear that using the

Dunkin' Donuts Marks was likely to have caused confusion among consumers, who wrongly believed defendants to be operating a franchised Dunkin' Donuts shop. All seven factors[3] considered by the Court weigh in favor of plaintiffs. Therefore, the Court finds that plaintiffs are entitled to summary judgment on their trademark infringement and unfair competition claims.

**(D) Injunctive Relief Claim (Count VII)**

Plaintiffs seek the entry of a permanent injunction preventing defendants from utilizing confidential information, Dunkin' Donuts' trademarks or from operating the Tamiami Trail shop, the Bald Eagle Shop, and the Davis Boulevard shop. (Doc. #1, ¶¶ 73, 74.) The Court entered a Preliminary Injunction (Doc. #24) on July 30, 2007.

The Court is authorized to "grant permanent injunctions where infringement [of a trademark] is found to have occurred in order to prevent further infringing use of a mark." Aronowitz v. Healt-Chem Corp., ___ F.3d ___, 2008 WL 123790 (11th Cir. Jan. 19, 2008). The Court finds that in light of the entry of summary judgement on Counts I through V and VIII through X and for the same reasons

---

[3] (1) The type of mark; (2) the similarity between plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of the advertising methods; (6) defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with plaintiff's established mark; and (7) actual confusion. Cumulus Media, 304 F.3d at 1172 n.5.

articulated in its July 30, 2007 Opinion and Order (Doc. #23), that plaintiffs are entitled to a permanent injunction.

**(E) Damages**

Plaintiffs seek damages in the total amount of $20,068.98 against Cardillo under Counts I through V, and in the amount of $20,068.98 against Robert Cardillo under Count VI. Plaintiffs assert that they are willing to dismiss their claim for damages under Counts VIII through X if awarded the entire sum of $20,068.98. (Doc. #36, p. 12.) Plaintiffs submitted an affidavit by Andrea Springer, who is a Collections Specialist for Dunkin' Brands LLC to explain the $20,068.98 figure. The affidavit indicates that the following amounts are owed to plaintiffs as of November 12, 2007:

a. $4,110.78 under the Tamiami Trail Franchise Agreement for franchise and advertising fees for the weeks ending July 21, 2007 through August 11, 2007;

b. $828 under the Bald Eagle Franchise Agreement for franchise and advertising fees for the week ending June 23, 2007;

c. $2,668.84 under the Davis Boulevard Franchise Agreement for franchise and advertising fees for the weeks ending July 21, 2007 through August 4, 2007;

d. $1,088.03 under the Davis Extension Franchise Agreement (consisting of $152.19 for an ACT fee and $935.84 for an insufficient fund fee); and

    e. $11,373.33 under the Second Davis Extension Franchise Agreement related to attorneys' fees and costs incurred in the case of <u>Dunkin' Donuts Franchised Restaurants LLC, et al. v. Cardillo Capital, Inc., et al</u>, Case No. 2:07-cv-172-FTM-34-SRC. (the Related Case) (Doc. #37, p. 2.)

 The Court finds that based on Springer's affidavit plaintiffs are entitled to summary judgment on the issue of damages as to Counts I through IV as follows:

    a. Plaintiff is awarded $4,110.78 under Count I;

    b. Plaintiff is awarded $828.00 under Count II;

    c. Plaintiff is awarded $2,668.84 under Count III; and

    d. Plaintiff is awarded $1,088.03 under Count IV.

However, as to Count V relating to the breach of the Second Davis Extension Franchise Agreement the Court finds that plaintiffs have failed to demonstrate why attorney fees incurred in the pursuit of another case should be awarded under this cause of action. The related case was voluntarily dismissed and no prevailing party was determined. <u>See</u> Related Case Doc. # 25. In light of the Court's denial of damages as to Count V, and the unspecified amount of damages sought under Counts VIII through X, the Court will deny summary judgment as to the issue of damages under Counts V and VIII through X.

 Accordingly, it is now

  **ORDERED**:

1.   Plaintiffs' Motion for Summary Judgment (Doc. #36) is **GRANTED** as to the issue of liability on all counts and as to the issue of damages on Counts I, II, III, and IV as set forth above, and is **DENIED** as to the issue of damages under Counts V and VIII through X.

2.   A permanent injunction will be entered separately.

3.   The parties are to be prepared to present evidence as to the issue of damages under Counts V and VIII through X at the Pretrial Conference set for **Monday, March 24, 2008 at 9:00 A.M.,** before the undersigned, in **Courtroom A, Sixth Floor,** of the United States Courthouse, 2110 First Street, Fort Myers, Florida.

4.   The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __25th__ day of February, 2008.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge